P. Raymond Sirignano, J.
This is a hearing, pursuant to the authority of People v. Huntley (15 N Y 2d 72), which was directed by the court upon the defendant’s coram nobis application. The defendant was tried in this court on an indictment charging him and others with the crimes of robbery first degree, while armed. Upon his conviction, after a jury trial, he was sentenced - and is presently serving that sentence. Upon the hearing, the following testimony was adduced:
New York State Trooper, Thomas Buon, now Senior Investigator, testified that he, along with Sergeant Arthur Wright, took the defendant into custody at about 1:30 p.m. on June 16, 1954, in the Borough of Brooklyn. He stated that he worked out of the 270 Broadway, New York City office of the New York *59 State Police and that he brought the defendant to such office to await the arrival of officers of Troop K of Hawthorne, New York. He stated that at the time of the defendant’s arrest he did not have an arrest warrant with him. He knew, however, that one was in existence. He stated that he advised the defendant of the charges against him but did not question him concerning the same. He stated that the defendant was arrested at gunpoint and that his car was also brought to said 270 Broadway office. He stated that he did not physically abuse the defendant; did not threaten him, nor did he make any promises to him. He also stated that to his knowledge the defendant did not ask for an attorney, nor did he specifically ask to contact a certain Patrick Dempsey, Esq., a New York City attorney. He did not recall whether the defendant asked to call his mother. He stated that they arrived at the 270 Broadway office with the defendant at about 2:35 p.m. and that he did not give the defendant any food.
•Sergeant Wright, now a Major, testified substantially the same, and further testified that the defendant did not ask to use the telephone; that the defendant was not questioned, nor does he recall the defendant saying that he had a lawyer who had an office around the corner from 270 Broadway. He did not recall feeding the defendant; nor did he recall taking him to the bathroom.
Lieutenant Samuel J. Crodelle testified that in 1954 he was a Sergeant attached to Troop K and that he, along with Sergeant Lake, went to 270 Broadway, New York City, and took the defendant into custody. He testified that they arrived in New York City that day, June 16, 1954, at about 4:00 p.m. and that they left New York City with the defendant and went to Troop K at Hawthorne, arriving about 7:00 p.m. He stated that the defendant was not questioned on the way and upon their arrival there the defendant was booked for Harrison Police Department. He testified that he did not physically abuse the defendant; did not threaten him, nor did he make any promises to him. He stated that the defendant was not denied the right to use the bathroom. He further stated that he did not advise the defendant of his right to remain silent, to his right to an attorney, or of his right to call his family. He stated that he turned the defendant over to Sergeant Johnston and Detective De Macy of the Harrison Police Department, who then took him to Harrison Police Headquarters. He stated that he followed them there and then returned to Hawthorne.
Sergeant De Macy testified that on June 16, 1954, he was a detective and that on that day he wént to Troop K with Ser *60 geant Johnston to pick up the defendant and take him to Harrison Police Headquarters. He testified that a trooper’s car followed them to Harrison and then left. The defendant was booked and interrogated. Sergeant Johnston took a written statement from the defendant, after which he was placed in a cell. He testified that he did not threaten or physically abuse the defendant, nor did he make any promises to him. He stated that he photographed the defendant and that the photo he identified showed the defendant’s physical condition at the time of its taking. He stated that he did not advise the defendant of his right to counsel, nor was he requested by the defendant to phone anyone. He testified that the defendant was not denied the use of the bathroom; that the defendant never asked for food, nor did he ask to use the phone to call anyone.
Lieutenant Johnston testified that on June 16, 1954, he was a Sergeant on the Harrison Police Department and that he, along with Detective De Macy went to Hawthorne Barracks to pick up the defendant. They brought him to Harrison Police Headquarters where he was taken to an interrogation room. He stated that he obtained a statement from the defendant which he wrote in his own handwriting and which, after reading such statement and having it read to him, the defendant then .signed. He stated that he did not physically abuse the defendant, nor did he deny him the right to use the bathroom or refuse him food. He stated that when he and De Macy arrived at Hawthorne Barracks the defendant was being questioned by Assistant District Attorney Frederick Weeks, Jr. He stated that he questioned the defendant in the car on the way to Harrison and that he did not warn him of his right to an attorney, his right to remain silent, or his right to make use of a telephone. He further stated that the defendant never requested food, nor did he request to use the' phone to call anyone. He stated that he used no force or duress to obtain the statement and that the defendant was co-operative at all times and that neither he nor Detective De Macy ever struck the defendant.
The People also called other witnesses to authenticate the original transcript and its filing in the office of the County Clerk of Westchester County.
The defendant testified that he was arrested at gunpoint at 12 noon on June 16, 1954 at 47th Street and 2nd Avenue in Brooklyn by Troopers Wright and Buon; was frisked and taken to the 270 Broadway office. He claimed that he told the troopers that he wanted to stop to see his mother who lived five blocks away from the place of his arrest; but his *61 request was refused. He stated that he told the troopers that he had a lawyer named Dempsey who had an office on Chambers Street in New York City and that he wanted to call him; but was told that he would be permitted to do so later. He stated that he was questioned from 12:20 p.m. to 4:00 p.m. by the troopers in the New York City office. He testified that he was then taken in a police car to Hawthorne Barracks and that his own car, which he had been driving at the time of his arrest in Brooklyn, was also taken along, being driven by a trooper. He stated that it took some two hours to arrive at Hawthorne Barracks, traffic being heavy. He stated that they arrived about 7:00 p.m. ; that he was not fed nor permitted to use bathroom facilities. He stated that the police told him that they had a confession which implicated him; that he was questioned by many policemen and by Assistant District Attorney Frederick Weeks, Jr., who for a time was alone with him in a room at the barracks. He stated that Weeks did not advise him of his right to have an attorney, nor was he given any of the warnings now required by Miranda v. Arizona (384 U. S. 436); nor was he informed that he had already been indicted. He stated that he was taken to Harrison Police Headquarters where he was again interrogated, mainly by Sergeant Johnston. He claimed that Detective De Macy kept hitting him on the back of the head and that he signed the yellow sheets only to stop the constant beatings. He claimed that he still was not given food or drink, nor was he permitted to use the bathroom. He stated that he made requests to call on the telephone, but was not permitted to do so. He stated that when he was placed in a cell after the questioning he made no requests for medication. He stated he was given coffee and buns at 8:00 a.m. the next morning. He stated that he did not receive treatment at the County Jail and he made no complaints of the beatings to the authorities.
On cross-examination he stated that he was self-employed at the time of his arrest; that he had a 9th grade education; and that he read part of the .statement before he signed it and part of it was read to him. He stated that on January 16, 1954 he never asked for food, nor did he ask to use the bathroom. He stated he asked troopers to take him to see his mother and he told them that he wanted an attorney. He testified that he did not tell the arraigning Judge that he was beaten, nor did he tell the County Court Judge that he was beaten. He stated that he was not beaten or physically abused by the State Police officers and that only Detective De Macy struck him. He stated that he had a complete tran *62 script of the trial minutes and that at the trial he testified that he was beaten. He also testified that the wording of the statements was not his because at the time he did not have sufficient education to use the language that is found therein.
The question presented is the retroactivity of People v. Bodie (16 N Y 2d 275) which in essence held that a confession by a defendant after arrest pursuant to a warrant would not be admissible at his trial unless he was advised of his rights and knowingly and intelligently waived them. The defendant contends that Bodie has been retroactively applied in People v. Lee (N. Y. L. J., April 8, 1966, p. 17, col. 2) wherein Judge Dickinson, .sitting in this court, held that the use of a confession obtained after arraignment required the granting of a new trial; and similarly applied in People v. Martin, decided on July 26, 1966 (unreported) by Justice Charles B. Brasser, a Justice of the Supreme Court sitting in Wayne County. Based upon the foregoing decisions, defendant’s attorney urges that the confession in that instant case was involuntary and therefore, inadmissible and the conviction .should be vacated.
The People, on the other hand, contend that Bodie should not be applied retroactively. In both the Lee and the Martin cases (supra), the court excluded the statements made by the defendants after arraignment. In the instant case the statement made was pre-arraignment, so that the cases are factually dissimilar and, in any event, not binding or controlling.
The Court of Appeals in People v. De Renzzio (19 N Y 2d 45, 50) has held that the rules established in People v. Di Biasi (7 N Y 2d 544) and People v. Waterman (9 N Y 2d 561) (relating to admissibility of postindictment admissions) should not be applied retroactively as “ Such a result would do little to enhance confidence in the stability of New York law”, and would be injurious to the orderly administration of justice. The holdings by the United States Supreme Court in Johnson v. New Jersey (884 U. S. 719) and by the Court of Appeals in People v. McQueen (18 N Y 2d 337) further illustrate the theory that, because a practice is held today not to meet current standards of due process it necessarily constituted a denial of due process at an earlier time and is ground for reversal today, has been rejected as jurisprudentially unsound. This court therefore, holds that the rule enunciated in People v. Bodie (16 N Y 2d 275, supra) should likewise not be applied retroactively, and therefore so rules.
The defendant has contended during the hearing that he made a request to see his mother and a further request to contact an attorney. The police officers stated that they do not recall any *63 such requests. The defendant, by his testimony, apparently tried to bring his case within the ruling in People v. Donovan (13 N Y 2d 148) and People v. Pallia (14 N Y 2d 178) as regards communication with an attorney; and within the rule of People v. Hocking (15 N Y 2d 973) as regards to access to family. This court does not find that these contentions by the defendant have been factually established. Nevertheless, assuming they had been proven to the satisfaction of the court, the court would hold that the rules enunciated in the Donovan, Pallia and Hocking cases (supra) likewise would have no retroactive effect and would be applied prospectively only.
The court finds and concludes beyond a reasonable doubt, from all the credible evidence adduced upon this hearing, that the defendant was in no wise coerced into making any statements, admissions or confessions and that the written statement by the defendant was voluntarily made by him and therefore was admissible in evidence at the trial of the defendant in 1954.